United States District Court
Southern District of Texas
**ENTERED**
January 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES WILLIAM DEFOREST, | § | |
| TDCJ # 02250859, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-2984 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Charles William DeForest, is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ). DeForest filed a *pro se* petition for a writ of habeas corpus seeking relief from a state conviction (Dkt. 1). The respondent filed an answer (Dkt. 15) and a copy of the state court record (Dkt. 16), and DeForest responded (Dkt. 19). DeForest also filed two motions for judicial notice of case law and statutes (Dkt. 20; Dkt. 21). Having considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that DeForest's motions should be **granted** and the petition should be **dismissed** for the reasons explained below.

## I.       BACKGROUND

### A.       Procedural Background

On February 28, 2019, a jury convicted DeForest of engaging in organized criminal activity, enhanced, in Case No. 17-12838, 12th District Court of Madison County, Hon. Donald Kraemer presiding. The court sentenced DeForest to 40 years in TDCJ (Dkt. 16-

2, at 181-82). On the same day, and in the same court, the jury convicted him of theft of property between $2,500 and $30,000 in Case No. 17-12834.  For the theft conviction, the court sentenced him to 2 years in TDCJ's state jail division (Dkt. 16-1, at 177-78).

On July 7, 2021, the Tenth Court of Appeals affirmed both of DeForest's convictions.  *See DeForest v. State*, No. 10-19-00110-CR & 10-19-00111-CR, 2021 WL 2827938 (Tex. App.–Waco July 7, 2021, pet. ref'd); Dkt. 16-9 (memorandum opinion); Dkt. 16-10 (judgment in No. 10-19-00110-CR); Dkt. 16-11 (judgment in No. 10-19-00111-CR).  On November 17, 2021, the Court of Criminal Appeals refused his petition for discretionary review.  DeForest did not file a petition for a writ of *certiorari* in the United States Supreme Court.

On May 11, 2022, DeForest executed applications for state habeas relief from both convictions.  *See* Dkt. 16-17, at 7-25 (WR-93,833-01) (challenging conviction for theft); Dkt. 16-19, at 7-25 (WR-93,833-02) (challenging conviction for engaging in organized criminal activity).  On June 22, 2022, the Court of Criminal Appeals dismissed his challenge to the theft conviction because his sentence had been discharged (Dkt. 16-16) (WR-93,833-01).  On the same day, it denied without written order his application for habeas relief from his conviction for engaging in organized criminal activity (Dkt. 16-18) (WR-93,833-02).

On August 31, 2022, DeForest executed his federal petition.

### B.      **Factual Background**

The appellate court's summary of the facts recounts DeForest's role in the criminal scheme, which included hiding and pawning the stolen property:

Billy Ray Fannin, Jr. met John Wayne Keefer when they were both in county jail. Fannin testified that Keefer told him that if he ever needed anything, to let him know. Later, on April 9, 2017, Fannin contacted Keefer at Keefer's trailer. Fannin intended to steal some things and asked Keefer whether he would buy the stolen items. [DeForest] and Melissa Tedford (Keefer's girlfriend) were present during this conversation. [DeForest] lived with Keefer. Fannin testified that they struck a deal that he would steal property and that [DeForest], Keefer, and Tedford would buy it.

After Fannin had that conversation with [DeForest], Keefer, and Tedford, he and a juvenile, Tyler, returned to a place where they had been fishing earlier in the day and "grabbed some weed eaters and chain saws." They took the stolen items to Keefer's house and "got a price for it." [DeForest] was present during this transaction.

Fannin and Tyler then went to some property owned by Justin Lee. Lee owned a landscaping company. Fannin had worked for him until about three weeks or so earlier; Lee had fired him because he was a bad employee.

Lee kept the tools of his landscaping trade in a workshop on his property. The shop was situated on the inside so that operable tools were segregated from the inoperable ones that needed to be repaired.

When Fannin and Tyler arrived at Lee's property, they jumped the fence, and stole some landscaping equipment; they took only that equipment that was operable. They again took the stolen property to [DeForest], Keefer, and Tedford and "got a price on it."

There was also a Kawasaki Mule on Lee's property. Although the Mule was titled in Lee's brother's name, the Mule had been given to Lee's brother's eleven-year-old autistic son as a gift.

When Fannin took the landscaping equipment to [DeForest], Keefer, and Tedford, he told them that he could steal the Kawasaki Mule and bring it to them. [DeForest], Keefer, and Tedford were present during all or a part of the conversation. Fannin, Tyler, and Fannin's little sister, Ammie, went back to Lee's property to get the Mule. As Fannin, Tyler, and Ammie traveled back to Lee's property, [DeForest], Keefer, and Tedford followed them. Eventually, [DeForest], Keefer, and Tedford stopped following them. The plan was that they would all meet on another road close to Lee's property after Fannin, Tyler, and Ammie had the Mule; [DeForest], Keefer, and Tedford were to then take the Mule.

Fannin and Tyler got the Mule and met [DeForest], Keefer, and Tedford as previously arranged. [DeForest], Keefer, Tyler, and Tedford tried to load the Mule into the pickup that [DeForest], Keefer, and Tedford were in; they were unsuccessful. They decided to hide the Mule in a pasture until they could get a trailer and return for it the next day.

As they were in the process of hiding the Mule, they noticed lights from an approaching vehicle and the parties scattered. [DeForest] stayed with the Mule during the night until the others returned with a trailer.

Meanwhile, Fannin and Tyler went to another location to steal some more property. At this point, Fannin and Tyler locked themselves out of the Suburban that they were driving.

At around 4:30 a.m. on April 10, 2017, Fannin called Curtis Klingle, a deputy with the Madison County sheriff's office. Fannin was one of many young people that Deputy Klingle had mentored over the years. Fannin asked Deputy Klingle to help him unlock the Suburban. Deputy Klingle tried but was not able to gain access to the vehicle.

When the parties went to load the Mule, they discovered that Tyler had apparently taken the key to the Mule with him when they all scattered; they had to push it onto the trailer. After they loaded the Mule, [DeForest], Fannin, Keefer, and Tedford took it to a self-storage facility in Flynn. [DeForest] rented and signed the paperwork to rent—in his name—a self-storage unit there. The Mule was later located in that self-storage unit that had been rented by [DeForest].

When Lee's employees came to work around 8:00 a.m. on April 10, 2017, they noticed that operable "gear" was not in the shop where it was normally kept; they reported that to Lee. Lee noted that a chain saw, a hedge trimmer, two trimmers, two backpack blowers, a Kombimotor, and a DeWalt generator were missing. A 2011 Kawasaki Mule was also missing.

Lee reported the theft to the Madison County sheriff's office and Deputy Klingle responded. Lee furnished the serial numbers and descriptions of the missing property to Deputy Klingle. Lee also told Deputy Klingle that he had fired Fannin earlier.

When Lee told Deputy Klingle about firing Fannin, Deputy Klingle became suspicious and surmised that Fannin was a suspect in the theft. Deputy Klingle arranged for Fannin's sister, the owner of the Suburban that he had tried to unlock for Fannin earlier, to come and unlock it; she did. Inside, on

the console, Deputy Klingle found a Kawasaki Mule key. It was later
determined that it was the key to the stolen Mule.

Deputy Klingle asked Sergeant Larry Shiver, an investigator for the Madison
County sheriff's office, to assist in the investigation. Sergeant Shiver used the
LEADS system to check the serial numbers and descriptions of the items that
had been stolen from Lee. LEADS online is a data base used by pawn shops,
scrap yards and some gold dealers, as well as law enforcement personnel, to
track stolen property. Sergeant Shiver discovered that some of the property
that had been stolen from Lee had been pawned at a pawn shop in Tomball.

Sergeant Shiver put a hold on the property and went to the pawn shop in
Tomball. He recovered several of the items that had been stolen from Lee.
Sergeant Shiver also viewed videos of the transaction as recorded by video
equipment in the pawn shop. He recognized Keefer and Tedford and he also
identified [DeForest] from the videos. The videos show [DeForest] and the
pawn shop clerk as they moved Lee's generator into the pawn shop. The
videos also show [DeForest] hand his ID to the clerk, the clerk return the ID
to [DeForest], the clerk hand cash to [DeForest], [DeForest] sign a receipt
for the cash, [DeForest] put the money into his wallet and, finally, put the
wallet into his pocket.

*Deforest*, 2021 WL 2827938, at *2-3. The appellate court modified the theft judgment to

delete the assessment of costs and fees, and otherwise affirmed DeForest's convictions.

DeForest's state habeas applications raised five issues, including multiple claims

that his trial and appellate counsel were constitutionally ineffective.  The trial court took

no action on the applications (Dkt. 16-17, at 87; Dkt. 16-19, at 87), and the Court of

Criminal Appeals denied relief.

## II.   **LEGAL STANDARDS**

### A.   *Pro Se* **Pleadings**

Federal courts do not hold *pro se* habeas petitions "to the same stringent and

rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420,

426 (5th Cir. 2011) (cleaned up).   "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."  *Id.*

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA).   *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 572 U.S. at 419-20 (cleaned up). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up). To constitute an "unreasonable application" of clearly established federal

law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

## III.   <u>ANALYSIS</u>

As a preliminary matter, DeForest filed two motions for judicial notice. *See* Dkt. 20 (requesting judicial notice of *Reece v. State*, 670 S.W.3d 353, 355, 2023 Tex. App. LEXIS 2738 (Tex. App.–Texarkana 2023, no pet.), regarding improper enhancement of punishment for a theft conviction); Dkt. 21 (requesting judicial notice of TEX. PENAL CODE § 12.45 regarding admission of unadjudicated defenses). Both motions will be granted.

DeForest's federal petition raises three claims for relief: (1) his trial counsel was constitutionally ineffective (2) his appellate counsel was constitutionally ineffective; and, (3) the Court of Criminal Appeals violated his rights under the Fourteenth Amendment when it dismissed the habeas application challenging his theft conviction. The petition challenges both convictions.

The respondent argues that DeForest's challenge to his theft conviction is moot because his sentence is fully discharged. To the extent the sentence is fully discharged, the habeas challenge to the conviction must be dismissed as moot. *See* 28 U.S.C. § 2254(a) (a court may grant habeas relief under 28 U.S.C. § 2254 "*only* on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United

States") (emphasis added); *Brattain v. Cockrell*, 281 F.3d 1279 (5th Cir. 2001) (discussing "in custody" requirement).  Even if not moot, however, DeForest's habeas claims must be dismissed for the reasons stated below.

## A.   <u>Ineffective Assistance of Trial Counsel (Claim 1)</u>

In Claim 1, DeForest argues that his trial counsel was constitutionally ineffective because counsel (a) had a conflict of interest based on his representation of a family member in a custody case against DeForest; (b) failed to properly advise DeForest during the plea proceedings about the charges he faced and potential sentences; (c) failed to file a motion to quash the indictment; and (d) failed to object to the jury instruction (Dkt. 1, at 6, 17-26).  DeForest raised this claim in his state habeas proceedings (Dkt. 16-19, at 16-17 (Claim 3)).  Trial counsel did not file an affidavit in response to DeForest's claims, and the trial court did not issue findings of fact and conclusions of law.  The Court of Criminal Appeals denied relief.

### 1.   **Legal standards**

A criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .
>
> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable."  This requires the showing of a

reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 688, at 687-89, 694)).  *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  This requires a "substantial, not just conceivable, likelihood of a different result."  *Pinholster*, 563 U.S. at 189 (cleaned up).  The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004). The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case."  *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (cleaned up).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms.  *Strickland*, 466 U.S. at 689.  A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  Any "strategic decisions" made by trial counsel "must be given a strong degree of deference."  *Rhoades*, 852 F.3d at 432.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690; *see Rhoades*, 852 F.3d at 434.

On habeas review, when a state court has adjudicated an ineffective-assistance-of-counsel claim on the merits, the petitioner bears an especially heavy burden. The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (cleaned up). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

### 2.     Conflict of Interest (Claim 1(a))

DeForest claims that his trial counsel had a conflict of interest because counsel had previously represented DeForest's sister in a custody battle against him.

The Sixth Amendment's guarantee of counsel for criminal defendants requires "the presence of competence and absence of conflicts." *United States v. Sheperd*, 27 F.4th 1075, 1082 (5th Cir. 2022). To prevail on a claim regarding attorney's conflict of interest, a petitioner must show that: (1) "there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict," and (2) the actual conflict "adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005) (emphasis original); *see Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Beets v. Scott*, 65 F.3d

1258 (5th Cir. 1995) (en banc).  This prejudice standard is less demanding than *Strickland*'s "reasonable probability" standard, and "turns on whether the conflict adversely affected the representation *itself*."  *Sheperd*, 27 F.4th at 1083 & n. 20 (emphasis original) (citing *Infante*, 404 F.3d at 391).

DeForest claims that his trial counsel had a "personal vendetta" against him because, on dates not specified by DeForest, counsel represented DeForest's sister "in a custody battle which caused Mr. DeForest to lose custody of his daughter" (Dkt. 1, at 18-19).  He further claims that, after he complained in writing to the trial judge and asked that counsel be removed, the trial court had a "duty to investigate the conflict so that all of the truth of the matter can be determined" (*id*. at 19; *see* Dkt. 19, at 2 (arguing that, "[w]hen a conflict arises in a court of law, the court has an obligation to investigate whether a conflict exists or not")).  However, DeForest does not allege facts that could demonstrate that, in representing his sister, counsel "actively represented conflicting interests."  *See Beets*, 65 F.3d at 1267-68 (quoting *Strickland*, 466 U.S. at 692; *Cuyler*, 446 U.S. at 350).  The case authorities state that a "merely potential or hypothetical conflict" is insufficient to show that an attorney operated under a conflict.  *Infante*, 404 F.3d at 391.  DeForest has not demonstrated an "actual conflict."

Additionally, DeForest has not demonstrated that the purported conflict adversely affected his counsel's representation at trial.  *See Beets*, 65 F.3d at 1267-68.  Although he alleges that his counsel failed to move to quash the indictment and failed to object to the jury charge, he makes no explicit connection between these failures and the alleged conflict. *See* Dkt. 1, at 19 (arguing that counsel's conflict prejudiced him because he was

sentenced to 40 years "for a state jail felony which carries a maximum two year sentence" (citing Tex. Penal Code § 71.02)); Dkt. 19, at 2-3 (alleging that counsel's representation "cost [him] 40 years of his life" and that, after counsel had failed to move to quash the indictment or call certain witnesses, his failure to object to the jury charge "was further proof" that counsel was operating under a conflict). Moreover, as explained below in the analysis of Claims 1(c) and 1(d), DeForest has not demonstrated any meritorious basis for a motion to quash or an objection to the jury charge.

DeForest's claim regarding a conflict of interest does not satisfy the standards of *Strickland* or *Infante*. He also has not demonstrated that the state habeas court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

### 3. Plea Bargain (Claim 1(b))

DeForest claims that his counsel was ineffective in connection with his plea proceeding, in which he rejected the prosecution's offer and opted to go to trial. "[C]riminal defendants require effective counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Anaya v. Lumpkin*, 976 F.3d 545 (5th Cir. 2020). In the context of plea negotiations, a counsel's performance is deficient under *Strickland* when counsel fails to inform a defendant of the risks of going to trial:

> Our *Strickland* precedent in the context of plea negotiations is clear that a defendant must have a full understanding of the risks of going to trial. Otherwise, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. Plea negotiations are full of high stakes and hard choices. Pitch perfect counsel is neither expected nor required. But having competent counsel means being aware of the relevant circumstances and the likely consequences of going to trial. Counsel is deficient when a

defendant charges onward to trial with a grave misconception as to the very nature of the proceeding and possible consequences.

*Anaya*, 976 F.3d at 552-53 (cleaned up).  To show prejudice for a lapsed or rejected plea offer due to counsel's deficient performance, the defendants must show "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.  This requires a three-part showing:

> The defendant must show that, but for his counsel's error, there is a reasonable probability that (1) the defendant would have accepted the earlier plea offer had he been afforded effective assistance of counsel; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Anaya*, 976 F.3d at 554 (cleaned up).

In this case, before the venire panel entered the courtroom on the first day of trial, DeForest took the stand (Dkt. 16-4, at 4-18).  Under questioning from his counsel, DeForest acknowledged that his counsel had previously relayed plea offers from the prosecution for sentences of 7 and 10 years in TDCJ (*id*. at 7-8).  He also acknowledged that counsel had visited him several times in the past week and had told him that he "was very concerned" and "thought [DeForest] should consider taking the State's offer" (*id*. at 9).  He confirmed that his counsel had advised him that, if he were convicted of engaging in organized criminal activity and the two enhancements based on his prior convictions were found true, his range of punishment would be 25 to 99 years (*id*. at 6-7).[1]  Although DeForest protested,

---

[1]     DeForest confirmed that counsel had provided him with a copy of Texas Penal Code § 12.42, which provided for the increased sentencing range. *Id.*; *see* TEX. PENAL CODE § 12.42(d)

stating "[h]ow can that be?" and "[t]hat indictment is wrong," he agreed that counsel had provided him with the information and that he was aware of it (*id.*). He also confirmed that he had chosen to reject the plea offer (*id.* at 9).

DeForest now claims that his trial counsel was "ineffective in the plea bargain process for not informing [DeForest] properly about the charges against him" (Dkt. 1, at 20). He also asserts that his counsel knew that he was denied "access to an up-to-date law library" in the county jail and thus that "information on the charges was vital to the defendant" (*id.*).

The trial record reflects that trial counsel clearly advised DeForest that he was facing a prison term of 25 to 99 years if he were convicted and the enhancements were found true; that counsel advised him to take the State's offer; and that DeForest rejected the offer and went to trial. The jury then convicted him of both offenses and the court sentenced him to 40 years in TDCJ for engaging in organized criminal activity. DeForest fails to show that his trial counsel provided incompetent or erroneous advice. *See Anaya*, 976 F.3d at 552 ("having competent counsel means being aware of the relevant circumstances and the likely consequences of going to trial") (cleaned up). He also does not demonstrate that the state habeas court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

---

(requiring sentence between 25 and 99 years for certain felony convictions when enhanced by two prior felony convictions) (eff. Jan 1, 2017)).

### 4.      Motion to Quash (Claim 1(c))

DeForest claims that his trial counsel was constitutionally ineffective because he failed to file a motion to quash the indictment for engaging in organized criminal activity. The statute under which DeForest was indicted defined the offense of engaging in organized criminal activity as follows:

> A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit . . . theft . . .

TEX. PENAL CODE § 71.02(a)(1) (eff. Sept. 1, 2015, to Aug. 31, 2019). The indictment against DeForest tracked this statutory language, charging that, on or about April 9, 2017, he had conspired to commit theft "with the intent to establish, maintain, or participate in a combination or in the profits of a combination" of persons (Dkt. 16-2, at 11).

DeForest alleges that he asked his counsel "on several occasions" to file a motion to quash the indictment "due to the fact that the elements of criminal activity did not exist," based on his theory that the evidence did not support a finding that he actually participated in the theft and/or conspiracy (Dkt. 1, at 21; *see* Dkt. 19, at 4). However, in most cases, an indictment that tracks the statutory language is sufficient to provide a defendant with adequate notice of the charged offense. *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex. Crim. App. 2017); *State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008). DeForest's arguments in these proceedings are insufficient to demonstrate a meritorious basis for a motion to quash the indictment. Additionally, the Court notes that the appellate court rejected a similar challenge from DeForest, finding the evidence sufficient to support his

conviction and determining that DeForest "personally pawned much of the stolen property and put the money in his pocket," hauled some stolen property, and leased a storage building to hide the stolen property, among other evidence. *Deforest*, 2021 WL 2827938, at *4.

DeForest does not show a reasonable probability of a changed outcome if his trial counsel had filed a motion to quash the indictment. S*ee Rhoades*, 852 F.3d at 432; *Sones v. Hartgett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections"). He also does not demonstrate that the state habeas court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

### 5.    Objection to Jury Instruction (Claim 1(d))

DeForest claims that his trial counsel was constitutionally ineffective because he failed to object to the jury instruction, arguing that the instruction "did not ask the jury to find the elements of the offense, but told them that the elements existed" (Dkt. 1, at 23-24; *see* Dkt. 19, at 4).  His argument focuses on the court's use of the word "who" in the following instruction:

> Now, if you find from the evidence beyond a reasonable doubt that on or about 9th, day of April 2017 and before the presentment of this indictment (sic), in Madison County and State of Texas CHARLES WILLIAM DEFOREST did then and there with the intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of the defendant and Melissa Tedford and Billy Fannin and John Wayne Keefer and [Tyler], a juvenile, ***who*** collaborated or

conspired to commit the offense of Theft of Property of a value of $2,500 or more but less than $30,000 then you will so say by your verdict "Guilty." Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

*DeForest*, 2021 WL 2827938, at \*5 (emphasis added). DeForest argues that the word "who" before the phrase "collaborated or conspired" effectively informed the jury "that all five individuals had committed the crime," in violation of his due-process rights (Dkt. 1, at 25 (citing *O'Brien v. State*, 544 S.W.3d 376, 379 (Tex. Crim. App. 2018)).

DeForest raised this issue in his direct appeal.  The appellate court overruled the issue, holding that "a plain reading of the instruction leads to the conclusion that the trial court inquired of the jury whether [DeForest] was a member of the named combination and whether that combination conspired to commit the offense of theft; it did not inform the jury of the truth of that allegation." *DeForest*, 2021 WL 2827938, at \*5.

DeForest's arguments in these proceedings are insufficient to show a reasonable probability of a changed outcome if his trial counsel had objected to the instruction.  S*ee Rhoades*, 852 F.3d at 432; *Sones*, 61 F.3d at 415 n. 5; *Koch*, 907 F.2d at 527.  He also does not show that the state habeas court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

## B.    Ineffective Assistance of Appellate Counsel (Claim 2)

DeForest claims that his appellate counsel was constitutionally ineffective when he (1) failed to raise the issue of trial counsel's ineffectiveness and (2) failed to apply the correct legal standard in his appellate brief challenging the jury instructions (Dkt. 1, at 6,

26-30; Dkt. 19, at 5-6). He raised this issue in state habeas proceedings (Dkt. 16-19, at 18-19 (Claim 4)), and the state habeas court denied relief.

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Dorsey v. Stephens*, 720 F.3d 309, 319-21 (5th Cir. 2013). As with a claim regarding trial counsel, a petitioner must show that his appellate counsel's performance was deficient and that the petitioner was prejudiced. *Id.* at 319 (citing *Strickland*). Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Id.* at 320 (cleaned up). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Effective advocates "winnow[] out weaker arguments on appeal" and focus on key issues. *Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2013) (cleaned up). A prejudice showing for an ineffective-assistance-of-appellate-counsel claim requires a showing of "a reasonable probability that, but for his counsel's [errors], [the petitioner] would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

Here, DeForest first claims that his appellate counsel failed to raise a meritorious issue, in particular, that trial counsel was constitutionally ineffective for his failure to object to the jury charge regarding organized criminal activity. In Texas, ineffective-assistance-of-trial claims generally are brought in habeas proceedings rather than on direct appeal. *See Trevino v. Thaler*, 569 U.S. 413, 425-26 (2013) (citing, *inter alia*, *Mata v. State*, 226 S.W.3d 425, 430, n. 14 (Tex. Crim. App. 2007); *Sprouse v. State*, No. AP–74933, 2007 WL 283152, *7 (Tex. Crim. App., Jan. 31, 2007) (unpublished)). In any event, this claim,

like Claim 1(d), relies on his trial counsel's failure to object to language in the charge that, according to DeForest, informed the jury that elements of the offense existed (Dkt. 1, at 27-28; *see id.* at 23-24).   Given that the appellate court squarely rejected DeForest's challenge to the charge's language, *see DeForest*, 2021 WL 2827938, at *5, he fails to demonstrate that, if his appellate counsel had raised an ineffective-assistance-of-trial counsel claim, he would have prevailed on appeal. *See Robbins*, 528 U.S. at 285.

Second, DeForest alleges that his appellate counsel incorrectly cited *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), as the proper harm standard for his claim regarding his jury charge (Dkt. 1, at 29-30; Dkt. 19, at 5-6).  *Almanza* held that, if an error in the jury charge was not the subject of a timely objection in the trial court, a defendant was required to show "egregious harm" in order to warrant reversal.  *Almanza*, 686 S.W.2d at 171.   DeForest's appellate counsel argued in his briefing that *Almanza* governed the harm inquiry "where, as here, no objection to the charge" was made at trial (Dkt. 16-12, at 18).[2]  DeForest cites no authority supporting his position that *Almanza* was improperly cited by his appellate counsel given that, as he acknowledges, his trial counsel failed to object to the charge.  He therefore does not show that his appellate counsel's performance was deficient.  *See Dorsey*, 720 F.3d at 319.

DeForest's arguments in this Court are insufficient to demonstrate that the state habeas court's determination on this claim was contrary to, or an unreasonable application

---

[2]     The appellate court primarily held that the charge's language was not improper but, in the alternative, determined that reversal was not warranted because no objection was made at trial and DeForest had not shown "egregious harm." *DeForest*, 2021 WL 2827938, at *5 (citing *Almanza*, 686 S.W.2d at 171)).

of, *Strickland* or other relevant federal law.  He therefore does not show that habeas relief is warranted under 28 U.S.C. § 2254(d).

### C.    Equal Protection Violation (Claim 3)

DeForest claims that the Court of Criminal Appeals violated his right to equal protection of the law under the Fourteenth Amendment when it dismissed his state habeas application without written order (Dkt. 1, at 7, 31-33; Dkt. 19, at 6). This claim refers to his habeas application from his conviction and two-year sentence for theft. On June 22, 2022, the Court of Criminal Appeals dismissed his application without written order because his sentence had been discharged.

DeForest claims that the Court of Criminal Appeals erred because, even though he is no longer in custody for the theft charge, a "collateral consequence" from the conviction can serve as the basis for a habeas application (Dkt. 1, at 32 (citing, *inter alia*, *Ex parte Ormsby*, 676 S.W.2d 130 (Tex. Crim. App. 1984) (considering collateral consequences of an invalid conviction)).  He argues that he "is being held in TDCJ under a collateral consequence stemming from a 'theft' charge that has been discharged," apparently referring to his separate conviction for engaging in organized criminal activity (Dkt. 19, at 6).

DeForest's claim is not cognizable on federal habeas review.  Infirmities or errors in state habeas proceedings "do not constitute grounds for relief in federal court." *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) (cleaned up); *see Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding

collateral to the detention and not the detention itself") (cleaned up); *Tucker v. Lumpkin*, No. CV H-23-907, 2023 WL 2959886 (S.D. Tex. Mar. 23, 2023).  His constitutional claim against the Court of Criminal Appeals therefore will be dismissed.

## IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529

U.S. at 484; *see Pierre v. Hooper*, 51 F.4th 135, 137 (5th Cir. 2022) (a certificate of appealability may not issue based solely on a debatable procedural ruling).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.   **CONCLUSION**

For the reasons stated above the Court **ORDERS** as follows:

1.     The petitioner's motions for judicial notice (Dkt. 20; Dkt. 21) are **GRANTED.**

2.     DeForest's claims in his petition for a writ of habeas corpus (Dkt. 1) are **DENIED with prejudice** and this habeas action is **DISMISSED**.

3.     A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on _____ January 22 _____, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE